UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-21057-BLOOM/DAMIAN

CELIA MARIE CASTRO,

       Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

       Defendant.

_____/

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 16 & 17]**

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed October 1 and October 30, 2022. [ECF Nos. 16 and 17]. Plaintiff, Celia Marie Castro ("Plaintiff" or "Ms. Castro"), seeks reversal and remand of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). This matter was referred to the undersigned for a ruling on all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters. [ECF No. 2]. *See* 28 U.S.C. § 636(b)(1)(B).[1]

The undersigned has reviewed the parties' memoranda [ECF Nos. 16, 17, and 19], the administrative record [ECF No. 14], the pertinent portions of this Court's record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth below, the undersigned recommends the Court deny Plaintiff's Motion for Summary

---

[1] The case was reassigned to the Honorable Beth Bloom, United States District Judge, on January 27, 2023, for all further proceedings. [ECF No. 20].

Judgment [ECF No. 16], grant Defendant's Motion for Summary Judgment [ECF No. 17], and affirm the decision of the Commissioner.

## I.  BACKGROUND

### A.  Ms. Castro's Claim For Benefits

Ms. Castro alleged disability beginning on January 20, 2012 due to attention deficit hyperactivity disorder (ADHD), anxiety, mental health, emotional health, and exhaustion. (R. 125–127, 263).[2] She was twenty-four (24) years old on her alleged onset date and thirty-three (33) years at the time of the administrative hearing, making her a "younger person" under Social Security regulations. (R. 126); *see* 20 C.F.R. § 404.1563(c). Ms. Castro completed high school and attended some college. (R. 97, 264). She has past relevant work experience as a cashier at a retail store. (R. 111, 281, 706).

### B.  Ms. Castro's Testimony

On March 18, 2021, Ms. Castro appeared, unrepresented by counsel, and testified at a telephonic hearing before Administrative Law Judge ("ALJ") Carol J. Pennock.[3] (R. 97–116). Ms. Castro testified that she lives with her grandmother, mother, and sister in an apartment. (R. 98, 108). Ms. Castro stated she was working part-time as a cashier at Michael's, but she believed she had been suspended following a disagreement with her supervisor. (R. 99–100, 111). Ms. Castro testified that she has problems with her back, legs, and feet. (R. 102–103). She "gets headaches a lot" and is taking Venlafaxine which "helps

---

[2] All references to "R." refer to the transcript of the Social Security Administration filed on August 1, 2022. [ECF No. 14]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

[3] Ms. Castro initially appeared at a telephonic hearing before the ALJ on November 12, 2020. (R. 75–88). The ALJ continued that hearing to March 18, 2021 to allow Ms. Castro time to find an attorney and to attend a psychiatric consultative examination. (R. 81).

somewhat." (R. 104). Ms. Castro stated she has been treated at Camillus Health Concern since 2013, and she continues her treatment over the phone every one or two months. (R. 104–105, 267).

Ms. Castro testified she cannot handle people yelling at her because it causes her to feel anxious and to shake. (R. 105–106). She also stated she has ADHD, is unable to concentrate, gets "spaced out a lot of times," and has "bad memory problems." *Id.* According to Ms. Castro, these mental health issues caused her to forget specific things while she was working. (R. 106).

Ms. Castro further testified that she would need a fifteen-minute break after working for four hours straight because of her leg problems. (R. 108). According to Ms. Castro's testimony, the most she could walk is about ten minutes to a nearby store. (R. 110). While working as a cashier, Ms. Castro stated she would stand for three or four hours before having to massage her back or lean on the counter to get some rest, and she could lift about five pounds. (R. 111, 113).

### C.    *Relevant Medical Evidence And Expert Opinions Regarding Ms. Castro*

The record contains treatment notes from doctors and other professionals regarding Ms. Castro's conditions. Below is a non-exhaustive summary of the relevant medical evidence and expert opinions regarding Ms. Castro's condition, as well as the opinion of the impartial vocational expert ("VE").

#### 1.    Relevant Medical Evidence And Expert Opinions Regarding Ms. Castro

##### a.    <u>Out-Patient Treatment At Camillus Health Concern</u>

Most of Plaintiff's medical records are from her ongoing outpatient mental health treatment at Camillus Health Concern ("Camillus Health"). In September 2013, Ms. Castro

was diagnosed at Camillus Health with major depressive disorder, anxiety disorder, and ADHD. (R. 341). During her intake evaluation, Ms. Castro reported having feelings of sadness, anxiety, and depression, a decrease in appetite, less energy, and difficulty concentrating and sleeping. (R. 342). She stated she was treated for ADHD with Ritalin and Adderall when she was thirteen years old. *Id.*

A progress note prepared by Jesse Faxas, Ph.D., at Camillus Health following Ms. Castro's initial intake indicates that Ms. Castro appeared calm, attentive, fully communicative, well groomed, and relaxed. (R. 343). Her speech was normal, and her demeanor was sad. *Id.* Ms. Castro showed signs of mild depression, and she denied having any suicidal ideas or intentions. *Id.* Dr. Faxas noted there were no signs of anxiety or hyperactive or attentional difficulties during his examination of Ms. Castro's mental status, and he prescribed Bupropion for the ADHD and Remeron for the depression. *Id.*

In November 2014, Ms. Castro was evaluated by a mental health counselor at Camillus Health. (R. 345–348). At that time, Ms. Castro's chief complaints were feeling anxious and difficulty concentrating due to her ADHD. (R. 345). She denied symptoms of depression. *Id.* Ms. Castro reported she has a history of non-compliance with medication because she would "forget to take the medications." (R. 346). She relies on public transportation to get to appointments. (R. 347). Upon examination, Ms. Castro appeared friendly, happy, attentive, fully communicative, and well-groomed but tense and anxious. *Id.* She exhibited signs of anxiety, restlessness, and hyperactivity. (R. 348). Ms. Castro was diagnosed with generalized anxiety disorder and ADHD. *Id.* The mental health counselor recommended Ms. Castro see a therapist and referred her to a psychiatrist for evaluation and possible medication management. *Id.*

4

Records indicate that Ms. Castro was treated by Carissa Caban-Aleman, M.D., from May 2016 to March 2017 at Camillus Health. (R. 359–400). During her initial assessment, Dr. Caban-Aleman diagnosed Ms. Castro with bipolar disorder, generalized anxiety disorder, ADHD, unspecified intellectual disabilities, and schizotypal disorder. (R. 362). At a follow-up visit in November 2016, Ms. Castro reported, "I feel tired, but less depressed also. The Effexor has helped; I want to continue." (R. 389). In February 2017, Ms. Castro reported having more energy and feeling calmer although a full dosage of Effexor was making her too sleepy. (R. 394). The following month, during a follow-up visit, Ms. Castro appeared friendly, happy, attentive, communicative, casually groomed, fidgety, and less distracted. (R. 399).

In June 2020, during a follow-up phone consultation with Dr. Faxas at Camillus Health, Ms. Castro reported that she was "doing better" with her current medications, her depression symptoms had improved as "they were less frequent and less intense," she was "less sad," and she denied any symptoms of anxiety. (R. 697).

### b. Vivian Gonzalez-Diaz, Ph.D.

Ms. Castro was referred to Vivian Gonzalez-Diaz, Ph.D., a clinical psychologist, for a mental status examination in February 2021, between the initial hearing and the continued hearing with the ALJ. (R. 704–710). Dr. Gonzalez-Diaz's evaluation indicates that Ms. Castro "arrived on time to her scheduled appointment dressed in a work uniform." (R. 704). As her chief complaint, Ms. Castro stated, "I would like to increase my stress tolerance," and she reported having severe symptoms of anxiety including shaking and chills. *Id.* She explained that her anxiety symptoms were triggered by family issues involving arguments between her mother and sister. *Id.* As for her ADHD symptoms, Ms. Castro reported experiencing inattention, difficulty sustaining attention, mind wandering, forgetfulness, disorganization, and a short attention span. *Id.* During the consultation, Ms. Castro stated

she was currently employed as a cashier at a retail store, and that she was employed in that position for the past two years. (R. 706). Prior to that, she was employed as a seasonal sales associate at a Macy's store, and she also worked as a waitress at a pizza restaurant for approximately one month. *Id.* Ms. Castro explained she had difficulty retaining information while working at the pizza restaurant because she would forget items on the menu. *Id.*

Upon examination, Ms. Castro had normal findings: "alert, appearance was casual as she appeared to be wearing a uniform and exhibited good hygiene. Posture was erect, gait was normal . . . . Facial expression was normal. Speech was adequate." (R. 707). Her mood was mildly depressed, and her affect was congruent to mood. *Id.* There were no delusions, hallucinations, or paranoid ideations noted. *Id.* Regarding Ms. Castro's executive functions, Dr. Gonzalez-Diaz opined as follows:

> Abstract reasoning was characterized by ability to identify similarities between objects and the ability to interpret proverbs appropriately. Estimated intellectual level appeared average.
>
> Patient was fully oriented to time, place person and situation. Patient was alert and responsive to interview.
>
> Judgment was good as evidenced by the ability to identify the appropriate action in a social situation and ability to give reasonable responses to hypothetical judgment questions, which suggest that in the external world, judgment is expected to be fair. Insight into problems appears normal.
>
> The patient was able to perform 10 sets of "serial 7". In an exercise of complex reverse mental tasks, the patient was capable of subtracting 5 sets of "serial 7" from 100 and showed ability for adding and ability for multiplying single digits. Attention and concentration was adequate.

(R. 707–708).

Dr. Gonzalez-Diaz prepared a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on behalf of Ms. Castro. (R. 701–703). According to Dr. Gonzalez-Diaz, Ms. Castro's impairments affect her ability to understand, remember, and

carry out instructions. Specifically, Ms. Castro has a mild restriction in her ability to understand and remember complex instructions. (R. 701). She has no restrictions in her ability to (1) understand and remember simple instructions; (2) carry out simple instructions; and (3) make judgments on simple work-related decisions. *Id.*

### c. Additional Evidence Submitted To Appeals Council

In her Motion, Plaintiff summarizes additional medical records submitted to the Appeals Council following her request for review of the ALJ's Decision. Mot. at 7–8. The Appeals Council reviewed the additional evidence, including the medical records from Jackson Behavioral Health System, dated November 19, 2021 to November 24, 2021, and determined that this additional evidence does not relate to the disability period at issue as the ALJ decided Plaintiff's claim through June 28, 2021. (R. 1–2). The Appeals Council informed Plaintiff that if she wished to have this additional evidence considered to determine whether she was disabled after June 28, 2021, she would need to submit a new application. *Id.* at 2. Thus, that additional information is not relevant to the Court's determination of the issues presently before the Court.

### 2. State Agency Physician's Opinions

The record also contains medical assessments completed by two state agency review physicians: Alan Harris, Ph.D., and Ronald Chase, M.D. (R. 95–105, 118–130).[4] However, neither state agency physician examined Ms. Castro in person.

---

[4] The opinions of state agency medical and psychological consultants Robert Steele, M.D. and Keith Bauer, Ph.D., which the ALJ found were not persuasive, are not addressed herein as both physicians concluded there was insufficient evidence to evaluate Plaintiff's claim. (R. 20, 126–134).

On September 19, 2019, Dr. Harris completed a Disability Determination Explanation ("DDE") at the reconsideration level. (R. 138–149). He opined that Ms. Castro's anxiety, ADHD, and depression were severe impairments. (R. 143). However, Dr. Harris found that Ms. Castro was not disabled. *Id.* Under the paragraph B criteria of the Psychiatric Review Technique (PRT), Dr. Harris found that Ms. Castro had moderate limitations in her ability to concentrate, persist, or maintain pace. *Id.* Dr. Harris noted that Ms. Castro's impairments "could reasonably be expected to produce the alleged symptoms, but the intensity of the symptoms and their impact on functioning does not appear to be markedly severe." (R. 144). Dr. Harris explained that while Ms. Castro claims she cannot perform chores due to distractibility, the evidence fails to support her assertion because, as she admits, she can cook, pay bills, and focus on working as a cashier. *Id.*

Regarding concentration and persistence limitations, Dr. Harris opined that Ms. Castro was moderately limited in her ability to understand, remember, and carry out detailed instructions and in her ability to maintain attention and concentration for extended periods. (R. 146). According to Dr. Harris, Ms. Castro "is able to understand, learn and retain simple and some detailed work instructions." (R. 147).

On September 28, 2019, Dr. Chase completed a case review at the reconsideration level. (R. 142). Consistent with Dr. Harris's opinion, Dr. Chase opined that Ms. Castro was not disabled and had no severe physical impairments as her limitations were mental only. (R. 148). Dr. Chase affirmed the PRT findings by Dr. Harris. (R. 149).

### 3.  Vocational Expert Testimony

At the hearing before the ALJ, an impartial VE testified that a hypothetical individual with Ms. Castro's age, education, and work experience, who had no exertional limitations

8

and the ability to do simple and detailed tasks, can perform unskilled, medium physical work as a linen room attendant, industrial cleaner, and hospital cleaner. (R. 116–117). Additionally, the VE testified that an individual with Ms. Castro's age, education, and work experience, who is limited to light exertional activities and can perform simple and detailed tasks with occasional interaction with supervisors, coworkers, and the general public, could perform unskilled, light work as a housekeeping cleaner, cafeteria attendant, and marker. (R. 117–118).

## II.   PROCEDURAL HISTORY

Ms. Castro applied for SSI on February 14, 2019. (R. 218–229). Her application was initially denied on July 2, 2019, and again, upon reconsideration, on October 3, 2019. (R. 152–154, 156–161). Ms. Castro then requested a hearing, and the ALJ held two hearings on November 12, 2020 and March 18, 2021. (R. 163–165, 75–120). On June 28, 2021, the ALJ issued an unfavorable decision finding Ms. Castro "has not been under a disability, as defined in the Social Security Act, since February 14, 2019." (R. 8–22) (the "Decision"). Thereafter, Ms. Castro requested review of the ALJ's Decision. (R. 214–216). On February 8, 2022, the Appeals Council denied her request for review, rendering the ALJ's Decision as the Commissioner's "final" determination. (R. 1–4). *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted her administrative remedies, on April 7, 2022, Ms. Castro filed the instant action seeking judicial review of the Commissioner's Decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). The administrative record was filed on August 1, 2022. [ECF No. 14]. Thereafter, Ms. Castro filed a Motion for Summary Judgment on October 1, 2022. [ECF No. 16].

Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, filed a Cross-Motion for Summary Judgment and a Response to Ms. Castro's Motion for Summary Judgment on October 30, 2022. [ECF No. 17]. On November 6, 2022, Ms. Castro filed her Reply in support of her Motion for Summary Judgment, indicating that no reply was necessary and relying on the original arguments and authority in her Motion. [ECF No. 19].

Both parties' Motions are fully briefed and ripe for adjudication.

### III.   THE SEQUENTIAL EVALUATION PROCESS

Eligibility for SSI benefits requires that the claimant be disabled. 42 U.S.C. § 1382. A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A "physical or mental impairment" is one that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D). A plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a).

The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work in the national economy. *Brightmon v. Soc. Sec.*

*Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572(a). Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574, 404.1575. If a claimant can engage in SGA, the ALJ will find that she is not disabled. 20 C.F.R. § 404.1571.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or a combination of impairments. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to perform basic work activities. *Id*. If the claimant does not have an MDI or combination of impairments that is severe, she is not considered disabled. *Id.*

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in Appendix 1 to Subpart P of Part 404, Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545. The ALJ must make this determination while stating "with particularity the weight given to different

medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform her past relevant work, in light of her RFC. 20 C.F.R. § 404.1520(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560(b), 404.1565. If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the claimant can do other work, she is not disabled. *Id*. If she is unable to do other work, she is disabled. *Id*. At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in significant numbers in the national economy that the claimant can perform, given her impairments. 20 C.F.R. §§ 404.1512, 404.1560(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

## IV.   THE ALJ'S FINDINGS

Applying the foregoing sequential evaluation process to Ms. Castro's claim for SSI benefits, the ALJ found that: (1) Ms. Castro has not engaged in SGA since her application date, February 14, 2019; (2) her migraine headache impairment is not severe, but her "general anxiety disorder, attention-deficit hyperactivity disorder (ADHD), persistent mood disorder

and rule out intellectual disability" are severe impairments; however, (3) her combination of impairments does not meet or medically equal the severity of one of the listed impairments. (R. 13–14).

The ALJ found that Ms. Castro has the RFC to perform a full range of work at all exertional levels and can perform "simple and detailed tasks with occasional interaction with supervisors, coworkers and general public." (R. 15–16). At step four, the ALJ found that Ms. Castro had no past relevant work. (R. 21).

The ALJ found the opinion of the state agency review psychological consultant Dr. Harris, that Ms. Castro was "not disabled" and had mild and moderate functional limitations, somewhat persuasive as it is relatively consistent with Ms. Castro's medical records. (R. 19). The ALJ found Ms. Castro was more limited in her ability to understand, remember, or apply information, and less limited in her ability to interact with others than Dr. Harris opined. *Id.* The ALJ found the opinion of the state agency medical consultant Dr. Chase, that Ms. Castro was "not disabled" and had no severe physical impairments, persuasive as it is consistent with the record as a whole. (R. 20).

On the other hand, the ALJ found the opinions of Dr. Gonzalez-Diaz, that Ms. Castro had a mild limitation in her ability to understand and remember complex instructions and in her ability to respond appropriately to usual work situation and changes, less persuasive as they are less consistent with Ms. Castro's medical records. (R. 20). Specifically, the ALJ found Ms. Castro was more limited in these domains than Dr. Gonzalez-Diaz opined based on the hearing level records. *Id.*

At the fifth and final step, the ALJ found that Ms. Castro could perform other jobs that exist in significant numbers in the national economy based on the representative occupations identified by the VE, including housekeeping cleaner, cafeteria attendant, and

marker. (R. 22). Therefore, the ALJ determined that Ms. Castro was not disabled under Section 1614(a)(3)(A) of the Social Security Act. *Id.*

## V.    ISSUES RAISED IN THE PARTIES' MOTIONS

In her Motion for Summary Judgment, Plaintiff asserts the ALJ's RFC finding and hypothetical questions to the VE failed to account for Plaintiff's moderate limitations in concentration, persistence, or pace. Mot. at 8–13. Specifically, Plaintiff contends the ALJ determined that Plaintiff had moderate limitations maintaining concentration, persistence, or pace at step three of the sequential evaluation process. However, the ALJ's RFC finding limited Plaintiff to both "simple and detailed tasks." This limitation was also included in the hypothetical to the VE. Based on these challenges, Ms. Castro contends the ALJ's Decision is not supported by substantial evidence and is the result of legal error. Ms. Castro seeks a reversal or remand for further administrative proceedings. *Id.* at 14.

The Commissioner filed a Response and Cross-Motion for Summary Judgment arguing that the final decision finding Ms. Castro is not disabled is supported by substantial evidence and that the correct legal standards were applied. [ECF No. 17]. The Commissioner's specific arguments in response to Ms. Castro's challenges are discussed below.

## VI.    APPLICABLE LEGAL STANDARDS[5]

The Court's review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were

---

[5] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing DIB is generally applicable to SSI cases. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

14

applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id.* The Court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VII.   DISCUSSION

As set forth above, Ms. Castro raises two challenges to the ALJ's Decision: (1) that the ALJ's assessment of Ms. Castro's RFC is not supported by substantial evidence; and (2) that the VE's testimony is not supported by substantial evidence. Each of these challenges is addressed below.

### A. Whether The ALJ's Findings Regarding Plaintiff's RFC Is Supported By Substantial Evidence.

As part of the required sequential evaluation process, the ALJ found, at steps two and three, that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. (R. 15). Plaintiff first contends that the ALJ's RFC assessment is deficient because it fails to account for these limitations as the RFC limited Plaintiff to both "simple and detailed tasks." Mot. at 8–11. Specifically, Plaintiff asserts, while the ALJ found Plaintiff's mental limitations in the paragraph B criteria included moderate limitations in the ability to concentrate, persist, or maintain pace, "the RFC only really limited Plaintiff in interacting

with others, as it stated she could perform up to detailed tasks." *Id.* at 11. Thus, Plaintiff contends the ALJ's assessment is inconsistent with her steps two and three findings. Plaintiff points out the ALJ properly accounted for social limitations in the RFC assessment by assigning a limitation to only occasional interaction with supervisors, coworkers, and the public.[6]

The Commissioner asserts the ALJ's RFC determination sufficiently accounted for the ALJ's finding that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace because the medical records provide substantial evidence to support the ALJ's assessment of Plaintiff's mental limitations. Resp. at 6. According to the Commissioner, Plaintiff failed to prove that her mental impairments posed limitations beyond those in the RFC finding made by the ALJ. *Id.* at 10.

At step two, the ALJ found that Plaintiff had severe mental impairments that significantly limit her ability to perform basic work activities, including general anxiety disorder, ADHD, persistent mood disorder, and rule out intellectual disability. (R. 14). And, at step 3, the ALJ determined that Ms. Castro has moderate limitations in the ability to concentrate, persist, or maintain pace. (R. 15). Nonetheless, the ALJ found the "paragraph B" criteria had not been satisfied because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation." *Id.*

In reaching her conclusions regarding the paragraph B criteria, the ALJ considered Ms. Castro's psychiatric evaluations, including her follow-up psychiatric examination at Camillus Health in August 2019, where Ms. Castro reported she was "doing very well" and was "still working." (R. 15, 582, 645). During that follow-up session, Plaintiff appeared with

---

[6] Plaintiff does not challenge the ALJ's findings regarding her social limitations.

a normal mood with no signs of depression or mood elevation, and her behavior was cooperative and attentive with no gross behavioral abnormalities. *Id.* Her associations remained intact, her thinking was logical, and her thought content appeared appropriate. *Id.* The ALJ also considered Plaintiff's consultative examination with Dr. Gonzalez-Diaz in February 2021. (R. 15, 704–710). In that consultation, Plaintiff reported she was employed at a retail store, and was employed as a cashier for the past two years. (R. 706). She stated that she was able to bathe and dress herself, did her own laundry and household chores, was able to shop at the store and handle money, cooked herself simple meals, and she enjoyed playing video games, drawing, and arts and crafts. *Id.*

> Before turning to consideration of Ms. Castro's RFC, the ALJ explained:
>
> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process required a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis.

(R. 15). Thus, an RFC is not a listing of impairments or limitations. Rather, the RFC is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1545 ("Your residual functional capacity is the most you can still do despite your limitations."); *Sherman v. Comm'r of Soc. Sec.*, No. 612-cv-916, 2013 WL 3196763, at *3 (M.D. Fla. June 21, 2013). As such, as the ALJ did here, the limitations identified in the paragraph B criteria are considered as part of the record as a whole, however, the RFC determination requires a "more detailed assessment" of a claimant's mental functioning than the broad categories in the paragraph B criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267–68 (11th Cir. 2019).

17

Plaintiff argues that the limitations identified at step three were not accounted for in the ALJ's RFC assessment at step four. The undersigned disagrees. It is clear from a review of the Decision that the ALJ considered and fully evaluated Plaintiff's mental impairments at steps two and three, including Plaintiff's moderate limitations in concentration, persistence, or pace, and determined that Plaintiff nonetheless had the RFC "to perform simple and detailed tasks." (R. 21).

As noted above, the ALJ found that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: [she] can perform simple and detailed tasks with occasional interaction with supervisors, coworkers and general public." (R. 15–16). In the Decision, the ALJ expressly states that in reaching this determination, she considered all of Plaintiff's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence," as well as Plaintiff's testimony at the hearing, including her testimony that she "suffered from ADHD, had memory problems and was unable to concentrate." (R. 16). Based upon her review of the record evidence, the ALJ concluded:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> [Plaintiff's] limited amount of medical records from the relevant time period indicate that she has a history of suffering from general anxiety disorder, attention-deficit hyperactivity disorder (ADHD), persistent mood disorder and rule out intellectual disability. However, the consistency of [Plaintiff's] allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence [in] the record. The positive objective clinical findings detailed below do not support more restrictive functional limitations than those assessed herein.

(R. 16). Thus, the ALJ found that Plaintiff's "medical history is inconsistent with her allegations of disability due to mental impairments." (R. 17). In other words, the ALJ determined that the objective medical evidence did not support a finding that Plaintiff's mental condition was more limiting than those in the RFC assessment. *Id.* As noted in the ALJ's Decision, Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (R. 19). Rather, the medical evidence of record indicates that Plaintiff "received routine and conservative treatment for her impairments," and such "lack of aggressive treatment, suggests that [Plaintiff's] symptoms and limitations were not as severe as [she] alleged." *Id.*

Importantly, the Court is concerned with whether the ALJ's RFC assessment is supported by substantial evidence. Here, the Decision demonstrates that it was. The ALJ summarized the objective medical evidence and medical opinions in the record that she considered in reaching Plaintiff's RFC. (R. 17–21). For example, in the Decision, the ALJ notes that in March 2019, at a psychiatry follow-up at Camillus Health, Plaintiff reported that she was "doing well," she stated, "I am working part time," and that she was living with her mother. (R. 17, 439, 507, 540). Although treatment notes reflect that Plaintiff's anxiety symptoms continued, the ALJ considered that the records indicate they have "improved in that they are less frequent or less intense." *Id.* The cited record evidence from that visit also shows that Plaintiff reported that her anxiety attacks occurred many times a day but that her feelings of anxiety "have lessened." *Id.* Upon examination, Plaintiff appeared friendly, attentive, communicative, and well groomed, had a normal weight, but she appeared anxious. *Id.* Plaintiff exhibited speech that was normal in rate, volume, and articulation, and was coherent and spontaneous. *Id.* Her language skills were intact, and signs of mild depression

were present. *Id.* Plaintiff's affect was appropriate, full range, and congruent with mood. *Id.* There were no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. *Id.* Plaintiff's associations were intact, thinking was logical, and thought content appeared appropriate. *Id.*

The treatment notes from Plaintiff's March 2019 psychiatry follow-up examination also indicate that, based on vocabulary and fund of information, Plaintiff's IQ was estimated to be in the "above average range." (R. 17, 20, 144, 343, 439, 507, 540, 656). Her insight into problems appeared normal, and her judgment appeared intact. *Id.* A short attention span was evident as Plaintiff was easily distracted. *Id.* Her behavior during the session was cooperative and attentive with no gross behavioral abnormalities. *Id.*

The ALJ also considered a progress note from Camillus Health in June 2020 indicating that Plaintiff was doing better with medications, she denied symptoms of anxiety, and although depressive symptoms continued, she reported feeling "less sad" and had improvement in her sleep. (R. 18, 697). And, the ALJ observed, during her most recent consultative examination with Dr. Gonzalez-Diaz in February 2021, Plaintiff reported having severe symptoms of anxiety, including shaking and chills, triggered by issues involving her family which occurred every day and exacerbated at night. Despite these serious impairments, Plaintiff stated she was employed at a retail store and that she was employed as a cashier for the past two years. *Id.* And Plaintiff had normal facial expressions, good hygiene, a normal gait, and her speech was adequate. *Id.* Her intellectual level appeared "average," and her judgment was good. *Id.* The ALJ also considered Dr. Harris's opinion, which the ALJ found to be "somewhat persuasive," that Plaintiff "is able to understand, learn and retain simple and some detailed work instructions." (R. 19, 147).

Based on the record before the Court, the undersigned finds the ALJ's RFC finding that Plaintiff is able to perform "simple and detailed tasks" despite her moderate limitations in concentration, persistence, or pace, is supported by substantial evidence which is identified in the ALJ's Decision. As always, the Court is not charged with re-weighing that evidence but only with determining if the evidence sufficiently supports the ALJ's Decision, and, here, the undersigned finds that it does. Plaintiff has not established otherwise. Moreover, Plaintiff provides no basis to find that the correct legal standards were not applied, and, to the contrary, the undersigned finds that they were. Therefore, Plaintiff's Motion should be denied insofar as it is based on the ALJ's RFC assessment.

### B. *Whether The VE's Testimony In Response To The ALJ's Hypothetical Is Supported By Substantial Evidence.*

Plaintiff next argues that the ALJ's hypothetical questions to the VE were deficient because they did not adequately account for Plaintiff's difficulties in maintaining concentration, persistence, and pace. Mot. at 8–10. According to Plaintiff, the hypothetical presented to the VE was less restrictive because it "did not limit Plaintiff to simple routine tasks" but rather, as in the ALJ's RFC assessment, the ALJ's hypothetical stated that Plaintiff could perform both "simple and detailed tasks." *Id.* It follows, according to Plaintiff, that the VE's testimony is not supported by substantial evidence.

The Commissioner asserts the ALJ's hypothetical questions to the VE fully accounted for the ALJ's finding that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace. The Commissioner contends that a limitation to unskilled work accounts for a rating of moderate difficulties in concentration, persistence, or pace when the record shows, as in the instant case, that the claimant can perform unskilled work. Resp. at 10.

At the hearing, the ALJ posed two hypotheticals to the VE, both taking into account Plaintiff's age, education, and work experience, with no exertional limitations and the ability to do "simple and detailed tasks." (R. 116–117). The VE determined that such an individual can perform unskilled, medium physical work as a linen room attendant, industrial cleaner, and hospital cleaner. (R. 117). In the second hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience with a restriction to light exertional activities who can perform "simple and detailed tasks" with occasional interaction with supervisors, coworkers, and the general public. (R. 117). The VE testified that such an individual could perform unskilled, light work as a housekeeping cleaner, cafeteria attendant, and marker. (R. 117–118).

The undersigned finds that the hypotheticals posed by the ALJ adequately took into consideration all of Plaintiff's impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). An ALJ, however, is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). As set forth above, although the ALJ found at step three that Plaintiff has moderate limitations in the ability to concentrate, persist, or maintain pace, the ALJ determined that Plaintiff's RFC was not affected by those limitations when the evidence is considered as a whole.

The Eleventh Circuit has held that an ALJ's hypothetical question must take into account the ALJ's step two finding that a claimant has a moderate limitation in maintaining concentration, persistence, or pace, unless the ALJ indicates that the medical evidence suggests that the claimant's ability to work is unaffected by the limitation or the ALJ's

question implicitly accounts for the limitation. *See Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011). Furthermore, the Eleventh Circuit has confirmed in several cases after *Winschel* that a limitation to unskilled work or simple tasks adequately addresses a claimant's moderate limitations in concentration, persistence, or pace where the record shows that the claimant could perform such tasks. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) (citing *Winschel*, 631 F.3d at 1181 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.")); *Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632, 635 (11th Cir. 2011) ("Because simple, unskilled work sufficiently accounted for limitations in concentration, persistence, and pace, as set forth in *Winschel*, the hypothetical posed adequately accounted for [the claimant's] limitations as they were implicitly included.").

Here, the ALJ determined that the medical evidence demonstrates that, even with moderate difficulties in concentration, persistence, or pace, Plaintiff is able to perform simple to detailed tasks. As discussed above, although, as noted by the ALJ, the medical evidence is very limited, the record supports the findings with respect to Plaintiff's mental impairments, and the ALJ's assessment of Plaintiff's RFC. The ALJ lays out the record evidence she considered in reaching her conclusions, and the undersigned has also reviewed the record before this Court. Plaintiff points to no medical records that support greater disabling mental limitations than those found by the ALJ.

The undersigned finds that the evidence supports a finding that despite some difficulty in concentration, persistence, or pace, Plaintiff remains able to perform work within the RFC assessed by the ALJ. Therefore, the ALJ's inclusion of a limitation to "simple and detailed

tasks" in the hypothetical questions to the VE fully accounted for the limitations that Plaintiff's mental impairments caused pursuant to *Winschel. See Servellon v. Comm'r of Soc. Sec.*, No. 6:20-cv-530, 2021 WL 7501166, at *3 ("[T]he limitation in the RFC . . . to 'simple[, routine, and] repetitive tasks' sufficiently accounts for the ALJ's findings of Plaintiff's ability to follow instructions, both simple and detailed."); *see also Paret v. Astrue*, No. 11-21152-CIV, 2012 WL 695983, at *6–8 (S.D. Fla. Jan. 6, 2012) (holding that the ALJ expressly accounted for the claimant's moderate limitations in social functioning by limiting the claimant to unskilled work in the RFC and hypothetical to the vocational expert, and that the ALJ's findings were supported by the medical evidence).

Moreover, even if the inclusion of detailed tasks in the RFC and hypothetical posed to the VE was not supported by the record evidence, that would not warrant a reversal of the ALJ's Decision. Contrary to Plaintiff's argument that the RFC and hypothetical were "less restrictive," the inclusion of detailed tasks in the hypothetical is, at most, harmless error. The type of jobs identified by the VE and found by the ALJ in determining that Plaintiff was not disabled (Housekeeping Cleaner, Cafeteria Attendant, and Marker) were all unskilled work which involves simple tasks. *See* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties."). *See Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 612 (11th Cir. 2015) (quoting *Winschel*, 631 F. 3d at 1180); *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (no error in accommodating moderate limitations in concentration, persistence, and pace where evidence showed claimant could perform unskilled work); *cf. Baldwin v. Colvin*, No. 8:13-CV-2963, 2015 WL 1268273, at *4–5 (M.D. Fla. Mar. 19, 2015) (holding that the inclusion of semi-skilled work in the RFC had no effect on the ALJ's decision because the jobs identified by the vocational expert

pertained to unskilled work, which also sufficiently accounted for the claimant's moderate limitation in concentration, persistence, or pace as supported by the medical evidence).

Therefore, although the hypothetical question posed by the ALJ to the VE did not expressly include Ms. Castro's limitations in concentration, persistence, and pace, the failure to include those limitations was harmless as the available jobs identified by the VE, all of which were unskilled jobs, implicitly accounted for them.

As such, the undersigned finds that the VE's response to the properly formulated hypothetical question constitutes substantial evidence supporting the ALJ's Decision, and Plaintiff's Motion should be denied to the extent it is based on this issue.

## VIII.    CONCLUSION AND RECOMMENDATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505–404.1511. The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards.

Although Ms. Castro has presented evidence of mental health issues, for the reasons set forth above and based on the record before the Court, the undersigned finds that Ms. Castro has failed to demonstrate that the Commissioner's final decision is not supported by substantial record evidence or that the correct legal standards were not applied.

Accordingly, the undersigned respectfully recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment [ECF No. 16], **GRANT** Defendant's Motion for Summary Judgment [ECF No. 17], and **AFFIRM** the Decision of the Commissioner.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 19th day of May 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Beth Bloom, *U.S. District Judge*
Counsel of Record